# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEAN CHRISTOPHER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> acting commissioner of Social ) <br> Security, ) <br> ) <br> Defendant. ) | No. 13 C 4490 <br><br> Magistrate Judge <br> Maria Valdez |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jean Christopher ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her claim for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). For the following reasons, the Court denies Plaintiff's Motion for Summary Judgment, [Doc. No. 15], and grants the Commissioner's Motion for Summary Judgment, [Doc. No. 20].

## BACKGROUND

I.  **PROCEDURAL AND FACTUAL HISTORY**[1]

Since 2007, Plaintiff has had difficulty with balancing, seeing, remembering, and concentrating. Unfortunately, by 2008, these problems worsened, and Plaintiff found herself unable to continue working. She thus filed a Title II application for SSDI benefits and a Title XVI application for SSI benefits, alleging a disability onset date of February 15, 2008. Her application was denied initially and upon reconsideration. Accordingly, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"), who found that she was not disabled at Step Four of the Social Security Administration's sequential analysis.

At the hearing, the ALJ found that Plaintiff suffered from the following severe impairments: semicircular canal dehiscence; vestibular migraine, and degenerative disc disease of the cervical spine. After determining that Plaintiff did not meet any listed impairment, the ALJ then calculated Plaintiff's Residual Functional Capacity ("RFC") and found that she could perform light work with the following exceptions: she should only occasionally climb ramps and stairs, and never climb ropes, ladders, or scaffolds; she should only occasionally balance, stoop, kneel, crouch, and crawl; and she must avoid any more than occasional exposure to extreme cold and hazards, such as moving machinery or unprotected heights.

The ALJ then consulted with a Vocational Expert ("VE") to determine if Plaintiff could perform her past relevant work or any jobs in the national economy.

---

[1] The following facts from the parties' submissions are undisputed unless otherwise noted.

On the basis of her RFC assessment and the VE's testimony, the ALJ concluded that Plaintiff could perform her past relevant work as a bartender. Accordingly, ALJ found that Plaintiff was not disabled under the Social Security Act.

## STANDARD OF REVIEW

I.  ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ conducts a five-step analysis and considers the following in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts

to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Under this standard, the ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). Rather, the ALJ must simply "build an accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, and minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

In reviewing an ALJ's decision, a court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841. Thus, where conflicting evidence would allow reasonable minds to differ, the court

4

must defer to the decision of the Commissioner. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

## DISCUSSION

On appeal, Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor based upon proper legal standards, asserting: (1) the ALJ improperly discredited the opinion of her neurologist; (2) the ALJ failed to consider all of the relevant medical evidence; and (3) the ALJ made an improper and vague credibility finding. The Court will address each issue in turn.

### I. The Treating Physician Rule

Plaintiff first asserts that the ALJ violated the treating physician rule by improperly discrediting the opinion of her neurologist, Dr. Rozenfeld. The treating physician rule requires ALJs to give controlling weight to a treating physician's opinion if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527. If the ALJ declines to do so, then he must offer "good reasons for discounting the opinion" in light of the following regulatory factors: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); 20 C.F.R. § 404.1527.

Dr. Rozenfeld began treating Plaintiff in March 2011, and he opined that she was disabled by superior canal dehiscence and that she had difficulty with

5

concentration, neural processing, balance, and movement. The ALJ, however, gave short shrift to Dr. Rozenfeld's conclusion of disability, and rightly so. *See* 20 C.F.R. § 404.1527(d) (explaining that medical source opinions concerning disability are "not medical opinions . . . but are, instead, opinions on issues reserved to the [judgment of] Commissioner.") In terms of Dr. Rozenfeld's other findings, the ALJ discredited them because they were largely based on Plaintiff's subjective complaints rather than objective medical evidence. And, for the parts that weren't derived from Plaintiff's accounts, the ALJ explained that the evidence Dr. Rozenfeld relied upon conflicted with other evidence in the record. For example, Dr. Rozenfeld reviewed Plaintiff's computerized dynamic posturography test and videonystagmography report, and interpreted them as indicating superior canal dehiscence, whereas Plaintiff's other doctors, Dr. Fishman and Dr. Neff, reviewed the same reports and found no evidence of superior canal dehiscence. These are sufficient reasons to discount Dr. Rozenfeld's opinion, and the Court therefore affirms the ALJ's decision in this regard. *See Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (explaining that ALJs need not explicitly discuss every factor in 20 C.F.R. § 404.1527; rather, they must only "minimally articulate" their reasons for discrediting a treating physician).

## II.   The ALJ's RFC Calculation and Medical Evidence

Plaintiff next asserts that the ALJ disregarded medical evidence that indicates she is further functionally limited than the ALJ found her to be. In particular, Plaintiff claims the ALJ failed to analyze and explain how her anxiety

6

disorder, visual/perceptual problems, and therapy records figured into the RFC calculation. But this argument lacks merit. ALJs are not required to discuss every piece of evidence in the record; rather they need only build a logical bridge from the evidence to their conclusions. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). That is precisely what the ALJ did here.

In calculating Plaintiff's RFC, while the ALJ did not refer specifically to her generalized anxiety disorder, it is nonetheless clear that her mental functioning was thoroughly assessed. The ALJ analyzed Plaintiff's mental functioning in terms of the "B Criteria" and activities of daily living, social functioning, concentration, persistence, etc., described specific evidence pertaining to each, (*see* R. 33-34), and ultimately determined that Plaintiff had no more than mild limitations in mental functioning. Plaintiff does not challenge the substance of these findings, but suggests that the ALJ erred simply by omitting any discussion of her anxiety. But this omission is unsurprising, given that the psychologist who diagnosed Plaintiff with generalized anxiety disorder did not attribute to it any functional limitations. As such, the ALJ's "failure" to mention that disorder was not error, much less reversible error.

With respect to Plaintiff's visual problems, she cites a litany of records that the ALJ indeed failed to discuss, but for good reason: the records do not indicate that Plaintiff is further functionally limited because of her vision. Plaintiff offers no argument for such a position herself, but merely notes that Dr. Rozenfeld opined that her vision problems prevent her from working with computers. As discussed

7

above, however, the ALJ properly discredited Dr. Rozenfeld's opinion. But even assuming that Plaintiff could not work with computers, and that the ALJ erroneously failed to include such a restriction in her RFC calculation, these "errors" would still be harmless, as Plaintiff's has cited no authority indicating that a claimant's inability to work with computers would render her automatically disabled at the light exertional level. *See See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("[Administrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result. That would be a waste of time and resources."); *see also See Bowen v. Yuckert*, 482, U.S. 137, 146, n.5 (1987) (explaining that the claimant carries the burden of producing evidence that a given impairment warrants functional restrictions).

Lastly, Plaintiff claims that the ALJ did not adequately consider her vestibular rehabilitation therapy and occupational therapy, which, according to Plaintiff, demonstrate that she had an unsteady gait and balancing problems. However, these problems were adequately addressed by the ALJ's RFC calculation, which limited Plaintiff to no more than occasionally climbing ramps and stairs, never climbing ladders, ropes, or scaffolds, only occasionally balancing, stooping, and kneeling, and so on. Plaintiff again fails to offer any argument or highlight any medical source opinion indicating that her gait and balance probelms warrant further functional restrictions than the ALJ found, which is fatal to her position on appeal. Ultimately, Plaintiff simply invites the Court to reweigh the evidence and

8

come to a different conclusion, which it cannot do. *See Ketelboeter v. Astrue*, 550 F.3d 620, 624 (7th Cir. 2008).

### III. The ALJ's Credibility Determination

Lastly, Plaintiff claims the ALJ's credibility finding was vague and improper. To overturn an ALJ's credibility determination, a plaintiff must show that it was "patently wrong" and "lack[ing] in any explanation or support." *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010). This is a very deferential standard, particularly because "a reviewing court lacks direct access to the witnesses, lacks the trier of fact's immersion in the case as a whole, and lacks the specialized tribunal's experience with the type of case under review." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). In the instant case, the ALJ discredited Plaintiff's allegations of pain and functional limitations because (1) her alleged disabling nausea is contradicted by her own statements to treating sources, and (2) her claims of pain and cognitive limitations are unsupported, or contradicted, by medical evidence in the record. The Court finds no error in this reasoning.

Again, Plaintiff does not challenge the validity of these findings, but merely asserts that the ALJ's decision must be overturned for technical defects: the use of boilerplate language and the failure to consider explicitly the regulatory factors in 20 C.F.R. 404. § 1529. Neither argument succeeds. Contrary to Plaintiff's assertions, the use of boilerplate language is not fatal to an ALJ's decision. Such language invites skepticism only when it is used without any other explanation, which is not the case here. *See Punzio v. Astrue*, 630 F.3d 704, 709 (2011). Plaintiff

9

similarly misunderstands the dynamic between an ALJ's credibility finding and the regulatory factors in 20 C.F.R. § 404.1529: ALJs need only *consider* these factors, but they are not required to engage in a factor-by-factor analysis in their opinions. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (explaining that an ALJ need only "minimally articulate" his reasons for discrediting a claimant's testimony). Here, the ALJ went far beyond "minimal articulations" and explained in detail various inconsistencies between the record and Plaintiff's allegations. As such, Plaintiff's argument fails, and the Court therefore affirms the ALJ's decision in its entirety.

## CONCLUSION

For the reasons set forth above, the Court denies Plaintiff's Motion for Summary Judgment, [Doc. No. 15], and grants the Commissioner's Motion for Summary Judgment, [Doc. No. 20].

**SO ORDERED.**   **ENTERED:**

**DATE: March 24, 2015**

_____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**